# DAVID COOTER *et al.*

## *v.*

# LAURA J. DEARBORN *et al.*

*Filed at Springfield January 22, 1886.*

1. GUARDIAN'S DEED—*must be based on decree.* A guardian has no power to sell the ward's land without an order of the proper court, for the purpose of raising funds for the ward's support and education. Without any petition for leave to sell the ward's land, and a decree granting leave, the guardian's deed is absolutely void.

2. LIMITATIONS—*under the act of 1839—of the good faith required.* Where a party, with full knowledge of the worthlessness of his deed, by misrepresentation as to the value of the land induces the mother of the infant owner to convey the same to him, neither he nor any one claiming through or under him, can claim under it as color of· title made in good faith.

3. SAME—*concurrence of color of title, possession, and payment of taxes.* To establish a bar under the seven years' Limitation law, the possession and the payment of taxes must relate to the same land which is described in the instrument relied on as color of title, and the payment must be for seven successive years.

4. SAME—*as between tenants in common.* As a general rule, the Statute of Limitations does not run as between tenants in common, for the reason that the possession of one tenant, in legal contemplation, is the possession of the others; and this is especially so when all parties derive title from the same deed or conveyance. Under the statute, the possession must be adverse before it will begin to run in favor of one tenant in common against the others.

5. LACHES—*excused by infancy and coverture.* Where a guardian, without any authority, sold and conveyed his ward's land in September, 1863, and the ward married before her majority, it was *held,* that such ward, in view of her infancy and coverture, was not guilty of *laches* in failing to file a bill until in 1875, to set aside such deed as a cloud upon her title.

6. PARTITION—*equalizing interests by money compensation—or owelty.* Where an equal partition of land can not otherwise be made, courts of equity may order that a certain sum be paid by the party to whom the most valuable property has been assigned. The sum so directed to be paid is called owelty.

7. SAME—*allowance for improvements—deduction of rents.* One of several tenants in common out of actual possession will be charged, not with the price or cost of improvements put upon the land by another tenant, but only with his proportion of the amount, which, at the time of the partition, they add to the value of the premises; and from this amount he will be allowed to deduct any sum to which he may have a just claim for use and occupancy of his portion enjoyed by the tenant making the improvements.

APPEAL from the Circuit Court of Champaign county; the Hon. C. B. SMITH, Judge, presiding.

Mr. WILLIAM B. WEBBER, for the appellants:

As between tenants in common one ought not to profit by improvements made by another, but should make fair contribution. Freeman on Co-tenancy and Partition, secs. 507, 510; *Hopkins* v. *Medley*, 97 Ill. 402; *Jessup* v. *Jessup*, 102 id. 480; *Gardner* v. *Dedrichs*, 41 id. 164; *Dean* v. *O'Meara*, 47 id. 120; *Wilton* v. *Tazewell*, 86 id. 29.

As to parol partition, see *Nichols* v. *Padfield*, 77 Ill. 253.

If a party receive and retain the purchase money of his land sold, he affirms the sale, and can not claim against it, whether it is void or only voidable. *Maple* v. *Kassart*, 53 Pa. St. 348; *Strable* v. *Smith*, 8 Watt, 280; *Wendall* v. *Van-Rensalaer*, 1 Johns. Ch. 344; *Brandon* v. *Brown*, 106 Ill. 527; *Tilton* v. *Nelson*, 27 Barb. 595; *Carpenter* v. *Dougherty*, 67 id. 397.

The principle of estoppel of this character applies to infants as well as adults. *Penn* v. *Wisey*, 19 Ill. 300.

Rescission of a sale for fraud must be sought within a reasonable time. 1 Hilliard on Vendors, 335; *Cunningham* v. *Fithian*, 2 Gilm. 651; *Gaddis* v. *Leeson*, 55 Ill. 83.

Presumption of good faith from the purchase and payment of land, payment of taxes, etc. *Hardin* v. *Gouveneur*, 69 Ill. 141; *Brooks* v. *Bruyn*, 35 id. 392.

Color of title may be under a void title. *Brooks'* v. *Bruyn*, 35 Ill. 392; *Woodard* v. *Blanchard*, 16 id. 32; *Stubblefield* v. *Borders*, 92 id. 283; *Conner* v. *Goodman*, 104 id. 365.

Laura Dearborn has not placed herself within the rule adopted from analogy to section 8 of the Limitation act. She became of age January 4, 1867, and did not bring this suit until August 12, 1875,—not within three years after attaining her majority. *Keal* v. *Healy*, 84 Ill. 105; *Cole* v. *Pennoyer*, 14 id. 158; *Davis* v. *Hall*, 92 id. 85.

Messrs. BRADLEY & BRADLEY, for the appellees:

Laura Dearborn was a *feme covert* from before arriving at majority until long after the bringing of this suit, and no Statute of Limitations could run against her. Rev. Stat. chap. 83, sec. 8.

As a general rule the statute does not run as between tenants in common, especially when they all derive title from the same source or deed. *Ball* v. *Palmer,* 81 Ill. 370; *Dugan* v. *Follett,* 100 id. 588; *Busch* v. *Huston,* 75 id. 343.

The court below considered the rents as equal to any and all improvements, which is fair, under the facts.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

Laura J. Dearborn, and her husband, George H. Dearborn, and Andrew Goodwin, appellees herein, filed their bill on August 12, 1875, in the circuit court of Champaign county, for a partition of 320 acres of land, described as the east half of section 13, township 22 north, range 7 east, and for the purpose of setting aside a deed from Jane Terwilliger, as guardian of Laura J. Dearborn, to one Nicholas Dolph, as a cloud upon the interest of said Laura in said land.

It is conceded that the premises were originally owned by James Goodwin, who died intestate about 1851, leaving the said Jane (since married), his widow, and fourteen children, two of whom are the said Laura and Andrew. By the death of James Goodwin, his fourteen children became owners, each of an undivided one-fourteenth of the 320 acres. By deeds from eight of the children, Benjamin Houston became the owner of eight-fourteenths, or fifty-six ninety-eighths, of the land. One of the children, Margaret Goodwin, died in 1859, at the age of seven years; another, Mary E. Goodwin, died in 1860, at the age of sixteen years. By the deaths of Margaret and Mary E., the remaining twelve children became the owners, each of an additional one ninety-eighth of said prem-

ises, and the widow, Jane Terwilliger, mother of Margaret and Mary E., became the owner of two ninety-eighths of said 320 acres. Thomas L. Goodwin, one of the surviving twelve children, conveyed to Benjamin Houston the one ninety-eighth inherited from his deceased sisters, thus making said Houston the owner of fifty-seven ninety-eighths, or about $186\frac{12}{100}$ undivided acres. Two of the fourteen children, Sarah E. and Samantha A., not included in the eight under whom Houston held, seemed to have made such transfers as that either all or a portion of their interests have become vested in George W. Gere, trustee for Burnham, Condit & Co. Houston died August 12, 1875, (the date of the filing of the bill,) and, from some time prior to 1858 to the day of his death, was in possession of the north 87 acres of the 320-acre tract. Since his death his administrator has sold the 87 acres above named to pay debts, and the same has been purchased by Nathaniel Helmick. On October 18, 1858, Houston, being then the owner of an undivided seven-fourteenths, or forty-nine ninety-eighths, of the 320 acres, made a transfer of some sort of interest to David and Marion Cooter, and David Cooter took possession of the 73 acres south of the north 87 acres, and has been in possession thereof ever since. Gere, trustee as aforesaid, claims to be owner of, and is in possession of, the $101\frac{1}{2}$ acres south of and adjoining the said 73 acres, but just how his title is derived, except as to the interests of Sarah E. and Samantha A., above named, does not appear very distinctly from the evidence. One Nicholas Dolph, in his lifetime, claimed to be the owner of the remaining $58\frac{2}{7}$ acres of said tract lying south of the $101\frac{1}{2}$ acres above named, and was in possession of the same when he died, in 1864. He had obtained three deeds,—one, dated March 10, 1864, was from Gardner Sweet and wife, conveying $58\frac{2}{7}$ acres off the south side of the south-east quarter of said section, but it is not shown that Sweet ever had any title to such $58\frac{2}{7}$ acres; one, dated September 26, 1863, was obtained from Jane Ter-

williger, as guardian of Laura J. Goodwin, (now Dearborn,) and conveys the undivided interest of said Laura in the tract in question, which descended to her as heir at law of James Goodwin; the third, dated July 13, 1863, was made to Dolph by Houston, conveying the undivided interest obtained by Houston from Thomas L. Goodwin, one of the fourteen children of James Goodwin. Nicholas Dolph died in 1864, leaving one child, Ida M. Dolph, and a widow, Julia A. Dolph, who married Isaac Devore in 1874, and Jesse Richards in 1877. Ida M. Dolph married Charles A. Weidner, and died in 1882, testate, and left her husband, Weidner, her sole devisee. It is claimed that Nicholas Dolph, in his lifetime, and his widow and child, since his death, have been in possession of the $58\frac{2}{7}$ acres since 1864.

The master, to whom the cause was referred in the court below, found that Helmick, holding as above stated, was in possession of the north 87 acres; that David Cooter, holding as already stated, was in possession of the 73 acres next south of the 87 acres; that Gere, trustee, holding as stated, was in possession of the $101\frac{1}{2}$ acres next south of the 73 acres, and that Weidner, holding as stated, was in possession of the south $58\frac{2}{7}$ acres above named. No finding was made in the master's report, or in the decree thereon, as to the nature or extent of the titles of the parties so in possession to the portions of the tract respectively held by them.

On November 13, 1874, the widow, Jane Terwilliger, conveyed her interest of two ninety-eighths or $6\frac{52}{100}$ acres, undivided, to appellee George H. Dearborn. Andrew Goodwin, appellee, by inheritance from his father and his two deceased sisters, became the owner of eight ninety-eighths or $26\frac{12}{100}$ acres, undivided. Laura J. Dearborn, by inheritance from her father and her deceased sisters, also became the owner of eight ninety-eighths or $26\frac{12}{100}$ acres, undivided. The total amount claimed by appellees is $58\frac{67}{100}$ acres, undivided.

33—115 ILL.

The first question to be considered is the validity of the deed from Jane Terwilliger, as guardian of Laura J. Goodwin, to Nicholas Dolph. This deed was absolutely void, and conveyed no title whatever. Laura herself did not sign it. She was only fourteen years old on September 26, 1863, when it was made. Whether her mother was then her guardian or not, does not appear from any evidence in the case. She says herself she was not then the guardian of her child. In this deed, however, in which she describes herself as guardian, she conveyed away to Dolph the undivided interest of her daughter in the 320 acres, "being all the right, interest and claim which descended to her, the said Laura Isabella Goodwin, as heir at law of James Goodwin, deceased." She had no power to sell the land of her ward without an order of the proper court directing her so to do, for the purpose of raising funds for the ward's support and education. No petition was ever presented asking for authority to make such a sale, and no decree was ever entered by any court permitting such a sale to be made.

It is claimed, however, that this deed was good color of title, and that Dolph went into possession under it as claim and color of title made in good faith. Whether the instrument shows on its face such a want of authority as to negative the idea of its having been made in good faith, is a question which it is not necessary to consider. The proof shows that the land was located in Champaign county, and that Dolph came over from Champaign county to Springfield, in Sangamon county, where Mrs. Terwilliger lived with her daughter, and there induced her to make a deed, with full knowledge of its worthlessness, and by misrepresentation as to the character and value of the land. Therefore neither he, nor his widow, nor his daughter, nor his son-in-law, the devisee of his daughter, could claim under it as color of title made in good faith. *McCagg* v. *Heacock,* 34 Ill. 476; *Hardin* v. *Gouveneur,* 69 id. 140; *Davis* v. *Hall,* 92 id. 85.

In view of her minority and coverture, Mrs. Dearborn has been guilty of no *laches* in bringing this bill for partition and to remove the cloud on her title. The court below decided correctly in setting aside the deed to Nicholas Dolph. Courts can not be too careful in protecting the interests of minors, who are liable to be the victims of designing men and ignorant or faithless guardians.

It is to be observed that the deed from Mrs. Terwilliger, as guardian, to Nicholas Dolph, only describes the one-fourteenth, or seven ninety-eighths, inherited by Laura Goodwin from her father, James Goodwin. Besides the seven ninety-eighths she also owned one ninety-eighth inherited from her deceased sisters, Margaret and Mary E. Goodwin. Even if the deed from her mother to Dolph had been valid, it did not pass the one ninety-eighth that came to her from her sisters, nor did she ever convey away this one ninety-eighth to any other person. She was, therefore, a tenant in common, in any event, with Nicholas Dolph and Houston in the ownership of the 320 acres. George H. Dearborn and Andrew Goodwin were also tenants in common in the ownership of the tract with Houston and Dolph. Dolph became the owner of eight ninety-eighths of said tract by deed to him, dated July 13, 1863, from Houston, conveying the eight ninety-eighths which Houston had obtained from Thomas L. Goodwin,—hence Dolph was already a tenant in common with Andrew Goodwin and Mrs. Terwilliger and Laura J. Goodwin, before he attempted to get the interest of the latter, on September 26, 1863. It follows that the possession of the north 87 acres by Houston and his heirs, and of the south $58\frac{2}{7}$ acres by Dolph and his heirs, can not be set up against the appellees, under the Limitation law, in reference to the payment of taxes and possession for seven years under claim and color of title. For the general rule unquestionably is, that the statute does not run as between tenants in common, on the ground, in part, that the possession of one tenant, in con-

templation of law, is the possession of the others; and this is especially so where all the parties derive title from the same deed or conveyance. (*Busch* v. *Huston*, 75 Ill. 343; *Ball et al.* v. *Palmer*, 81 id. 370; *Dugan* v. *Follett*, 100 id. 588.) There is nothing in the facts of this case which brings it within any of the exceptions to this general rule, or which tends to establish an adverse holding by any of the tenants in common against the others. Counsel for appellants says, in his brief: "I acknowledge the general rule to be that one tenant in common can not set up this statute as against another tenant in common."

David Cooter claims the benefit of the seven years' Limitation law as to the 73 acres held by him. October 18, 1858, Houston deeded to David Cooter and Marion Cooter land described as follows: "Of the east half of the north-west half of section 13, township 22 north, range 7 east, 61 acres, be the same more or less." This deed only conveyed to David Cooter the undivided half of a certain 61 acres. He did not obtain title to the other undivided half of this 61 acres that was deeded to Marion Cooter, until February 26, 1866. The tract which David Cooter took possession of, and upon which he claims to have paid taxes for seven years, and which he claims to have occupied for more than seven years, is 73 acres in the south half of the north-east quarter of said section 13. Evidently he can not claim this 73 acres under the deed from Houston, as color of title. Just what "the east half of the north-west half" means, is not apparent. It certainly does not describe the 73 acres in the south half of the north-east quarter of section 13. The proof shows that the possession was of one tract, while the deed set up as color of title, under which the possession was taken and held, describes an entirely different tract. The color of title describes one tract, while the tax receipts show that the taxes were paid on another tract. To establish a bar under the statute, the possession and the payment of taxes must relate to the same

land which is described in the instrument introduced as claim and color of title. (Sedgwick & Wait on Trial of Titles to Land, sec. 768.) Cooter has not, therefore, brought himself within the requirements of the seven years' Limitation law. It is true that on February 1, 1869, Houston executed a deed to David Cooter, conveying the 73 acres by a correct description; but seven years did not elapse after the date of this deed, before the filing of the bill. Moreover, Cooter does not produce any tax receipts for the years 1859, 1860 and 1864, and unless it be assumed that 1865 has been written in the record by mistake for 1868, there is no receipt for the taxes of 1868. Without the receipts for 1859, 1860, 1864 and 1868, Cooter has not shown the payment of taxes for any full period of seven years prior to the filing of the bill, upon any land, whether described in the color of title or not.

The decree rendered by the court below did not disturb the respective possessions of Helmick, Cooter, Gere and Weidner, as herein indicated. It decreed complainants to be the owners of $58\frac{3}{4}$ undivided acres in the whole tract, and finding the value of the $58\frac{3}{4}$ acres in dollars and cents, directed the amount to be paid by the parties in possession in certain proportions. This method of settling the rights of the parties seems to have been assented to by the counsel for the defendants below. The master does not find what the respective interests of the defendants were in the 320 acres. He says in his report: "I should have found the respective interests of all the defendants in said lands, but the solicitors for the defendants respectively desired that such finding should not be made." The awarding of a money compensation to some of the tenants in common, in lieu of a portion of the land itself, is within the power of a court of chancery in partition proceedings. When an equal partition can not be otherwise made, courts of equity may order that a certain sum be paid by the party to whom the most valuable purparty has been assigned. The sum itself directed to be paid to make the

partition equal, is called owelty. Freeman on Co-tenancy and Partition, sec. 507.

Gere, one of the defendants below, does not attack the decree. He has taken no appeal and assigned no errors. Appellants Helmick, Cooter and Weidner object to the portion of the decree now under consideration, upon two grounds. The first relates to the improvements. Houston made some improvements upon the 87 acres, Cooter upon the 73 acres, and Dolph and his representatives upon the $58\frac{2}{7}$ acres. They claim that the court should have ascertained the value of these improvements, the value of the land independent of the improvements, and the enhanced value of the land by reason of the improvements. Whatever improvements they placed upon the premises they are allowed to retain. There is some testimony showing the nature and value of the improvements, and the commissioners found and reported the value of the land. As the allowance or compensation for improvements is in all cases made, not as a matter of legal right, but purely from the desire of the court to do justice, the compensation will be estimated so as to inflict no injury on the co-tenant against whom the improvements are charged. He will therefore be charged, not with the price of the improvements, but only with his proportion of the amount which at the time of the partition they add to the value of the premises. From this amount he will also be entitled to deduct any sum to which he may have a just claim for use and occupancy of his moiety enjoyed by the co-tenant making the improvements. Freeman on Co-tenancy and Partition, sec. 510; *Rowan* v. *Reed*, 19 Ill. 28.

Appellants and those under whom they claim have been in the occupancy of the respective portions of this 320 acres which are now held by them, for many years. They are not only allowed to keep their improvements and retain their possession, but they are charged nothing for the use and occupancy of the $58\frac{75}{100}$ acres owned by appellees. The value of

such use and occupancy is a fair offset to such proportion of the increased value given to said premises by the improvements thereon as appellees are justly chargeable with.

The second objection has reference to the manner in which the total amount assessed against appellants and in favor of appellees has been apportioned among the appellants and Gere. Without going into detail, we are satisfied, from a careful examination of the record, that the apportionment has been fairly and equitably made, and so as to do appellants no injustice.

The decree of the court below is affirmed.

*Decree affirmed.*

The record in this case was originally assigned to Justice DICKEY. No opinion having been written by him in his lifetime, the record was re-assigned in November, 1885.