GARRETT HALLORAN *et al.*

*v.*

PATRICK HALLORAN *et al.*

*Filed at Mt. Vernon March 31, 1891.*

1. FRAUDULENT CONVEYANCE—*how availed of—as a defense.* On bill to have a deed, absolute in form, declared a mortgage, and to set it aside as satisfied, if the grantee (the defendant) relies on the defense that the deed was made in fraud of the grantor's creditors, he must set it up in his answer, or it will not avail.

2. SAME—*remedy—as between the parties—and otherwise.* Subject to some exceptions, the rule is, that where parties are concerned in illegal agreements they are left without remedy against each other, provided they are *in pari delicto.* The law will refuse its aid to either of them. This rule is applied to executed transactions as well as those which are executory, and is enforced both by courts of law and equity.

3. A fraudulent grantor, though unable to assert any rights or remedies founded on the unlawful thing done or intended to be done, does not forfeit any other remedy or right with respect to matters not within the purpose of the wrongful act. Where a fraudulent transfer of a debtor consists of a mortgage or deed as a security for an honest debt, he may file a bill to redeem the property from its operation.

4. And if a deed is made in fraud of the grantor's creditors, to secure a *bona fide* debt, which is valid between the parties, the grantor, on payment of the debt, may maintain a bill to have its satisfaction declared by the court.

5. ESTOPPEL—*by admission.* An acknowledgment or admission by a party of the validity of a sale of his property under a trust deed, and of the rights acquired by the purchaser thereunder, may or may not work an estoppel, according to the circumstances. It will not, unless made with a full knowledge of all the facts.

6. While an admission by a party against his interest is always admissible in evidence against him, it may or may not be conclusive. If the other party, relying on it, alters his position on the faith of it, the party making the admission will be estopped. But ordinarily a mere admission, unaccompanied by any equitable circumstance which should render it conclusive, will not work an estoppel.

7. NEW TRIAL—*verdict against the evidence—in chancery.* In a suit in chancery, where the issues of fact are submitted to a jury, the trial court and jury, from seeing and hearing the witnesses, have superior means of judging of their relative credibility, to that possessed by this

court; and where the evidence is conflicting, a new trial will not be granted, unless the verdict and decree are clearly against the weight of the evidence.

8. SAME—*personal difficulty between the parties—after the jury had retired.* After a case had been submitted to a jury, and they had retired to consider of their verdict, a violent altercation took place in the court yard between two of the parties, in which the successful party was the aggressor, who was immediately arrested and locked in jail. There was no evidence that the affray ever came to the notice of the jury : *Held,* that this was no ground for a new trial, even if the jury had knowledge of the affair, there being no presumption that this would have affected their deliberations if they had known of the difficulty.

9. PRACTICE—*improper remarks of counsel—to the jury.* Where affidavits filed on a motion for a new trial show a remark by plaintiff's counsel, in his closing address to the jury, which the court, on objection, held improper, and directed the counsel to desist from further like remarks, which he did, and practically retracted what he had said, it was *held,* that the facts shown by the affidavits established no ground for a new trial.

APPEAL from the City Court of East St. Louis; the Hon. B. H. CANBY, Judge, presiding.

Mr. JAMES M. HAY, and Mr. F. G. COCKRELL, for the appellants :

One of the attorneys for the complainants, in his closing argument to the jury, stated that one of the defendants, "John Halloran, had been chief of police of the city of East St. Louis for the period of four years," giving the time; that the jury had undoubtedly heard something of East St. Louis during this time; that it was a place to make money and grow rich. He also stated "that John Halloran had made over certain property to his brother Garrett," and wanted to know why this was, and answered by saying "that it looked like he had been sued by the city of East St. Louis, and wanted to get his property out of the reach of the process of the court."

While the jury were deliberating, Patrick Halloran made an assault upon John Halloran right under the door of the court house, and would have shot him, had he not been ar-

rested and placed in jail. A knowledge of this assault and arrest was conveyed to the jury, and, beyond doubt, had its influence in bringing about their verdict.

To establish a deed as a mortgage the evidence must be clear and convincing. *Wilson* v. *McDowell*, 78 Ill. 517; *Hancock* v. *Harper*, 86 id. 445; *Knowles* v. *Knowles*, id. 1.

As to declarations in disparagement of title, see 1 Greenleaf on Evidence, p. 133, sec. 109.

As to acquiescence in the sale under the trust deed, and *laches*, see *Williams* v. *Rhodes*, 81 Ill. 571; 2 Perry on Trusts, p. 517, sec. 870.; *Beach* v. *Shaw*, 57 Ill. 17.

Mr. L. H. HITE, and Mr. JESSE M. FREELS, for the appellees:

The sale under the deed of trust not having been requested by the legal holder of the note, was illegal. *Best* v. *Bank*, 76 Ill. 609; *Hamilton* v. *Lubukee*, 51 id. 415; *Barrett* v. *Hinckley*, 124 id. 40; *Burnap* v. *Cook*, 32 id. 168; *McFarland* v. *Dey*, 69 id. 419; Rev. Stat. chap. 98, sec. 4.

The payment of the note extinguished the mortgage, and a sale under a power after payment of the debt is void, even as to a *bona fide* purchaser. *Redmond* v. *Packenham*, 66 Ill. 434; *Ventres* v. *Cobb*, 105 id. 41; *Shippen* v. *Whittier*, 117 id. 288.

A stranger can not, by voluntarily paying the debt of another, be subrogated to the rights of the creditor. *Pearce* v. *Coal Co.* 121 Ill. 597; *Hough* v. *Life Ins. Co.* 57 id. 318.

John Halloran's statements to Miller and others are evidence against the claim he now makes. *Insurance Co.* v. *White*, 106 Ill. 72.

The deed of August 15, 1877, though absolute on its face, was intended only as a security for $1000, and parol evidence is admissible to show it was only a mortgage. *Workman* v. *Greening*, 115 Ill. 479; *Insurance Co.* v. *White*, 106 id. 67; *Wright* v. *Gray*, 101 id. 233; *Ruckman* v. *Alwood*, 71 id. 155; *Helm* v. *Boyd*, 124 id. 370; *Pugh* v. *Davis*, 96 U. S. 336.

An absolute deed given as security for a loan is a mortgage, both in law and equity. (*Workman* v. *Greening,* 115 Ill. 479; *Tilloon* v. *Moulton,* 23 id. 648.) And in equity it will be treated and enforced as a mortgage, though the agreement for redemption therefrom rests only in parol. *Insurance Co.* v. *White,* 106 Ill. 67; *Workman* v. *Greening,* 115 id. 480; *Jackson* v. *Lynch,* 129 id. 72.

Once a mortgage always a mortgage. *Insurance Co.* v. *White,* 106 Ill. 67.

Complainants' possession of the property was notice to Garrett Halloran, and to all parties, of their rights therein. *Strong* v. *Shea,* 83 Ill. 575; *Flint* v. *Lewis,* 61 id. 299; *Webber* v. *Curtiss,* 104 id. 320.

The doctrine of *laches* does not apply here. It can only be invoked by one in possession against one out of possession. *Bush* v. *Stanley,* 122 Ill. 407; *Bragg* v. *Olson,* 128 id. 540.

A party in the actual possession of land, as complainants were and are, may safely rest until his possession is invaded or his title attacked. Until attacked, *laches* will not run against him. *Orthwein* v. *Thomas,* 127 Ill. 555; *Newell* v. *Montgomery,* 129 id. 58.

If John, the mortgagee in this case, had been in possession, which he was not, the doctrine of *laches* or Statute of Limitations could not begin to run against Patrick till John asserted an adverse title denying the trust. *Jackson* v. *Lynch,* 129 Ill. 73.

There is nothing in the complaint of injury from improper remarks of counsel, as no improper ones were made. *Railroad Co.* v. *Dillon,* 123 Ill. 572.

. No ruling was made by the court as to the propriety or impropriety of the remarks complained of, and hence this record presents no question involving any improper remarks. *Holloway* v. *Johnson,* 129 Ill. 367.

Much latitude is allowed in argument to the jury, and nothing was said in this case which can be regarded as error. *Railroad Co.* v. *Perkins,* 125 Ill. 128.

Mr. Justice Bailey delivered the opinion of the Court:

This was a bill in chancery, brought by Patrick Halloran and Elizabeth Halloran, his wife, against Garrett Halloran, John Halloran and Eugene Halloran, to set aside and cancel certain deeds as clouds upon the complainants' title, and for an injunction and an accounting. The premises in controversy consist of a part of block C, in the town, now city, of East St. Louis. The bill alleges, in substance, that the complainants are the owners of said premises; that on the 12th day of March, 1876, Patrick Halloran executed a deed of trust thereon to Marcus Finch, as trustee, to secure the payment of four promissory notes, amounting in all to $1552.50, and due in one, two, three and four years after date, said notes being given to Page & Buckland for a part of the purchase money of said premises; that on the 15th day of August, 1877, Patrick Halloran executed a deed of said premises to John and Eugene Halloran, absolute on its face, and subject to said deed of trust, but that said deed was in fact a mortgage to secure an indebtedness of $1000 from Patrick Halloran to John Halloran; that said indebtedness for $1000 has been paid; that all the notes secured by said deed of trust, except the one maturing last which was for $375.75, were paid by Patrick Halloran, and that said last note was paid by John Halloran with the money of Patrick Halloran, he then being in the employ of Patrick Halloran in the management of his business; that by the payment of said notes said deed of trust was extinguished; that John Halloran was never the legal holder of said last mentioned note, but that he and Garrett Halloran, conspiring to defraud Patrick Halloran, afterwards wrongfully caused said premises to be advertised and sold under said deed of trust, and that at said sale Garrett Halloran pretended to purchase said property and received a trustee's deed therefor; that prior to and ever since said pretended sale, the complainants have been in possession of said prem-

ises claiming to be the owners thereof; that on the 21st day of May, 1888, Garrett Halloran demanded possession of said premises, and thereafter commenced an action of forcible detainer before a justice of the peace of St. Clair county to obtain possession thereof, claiming to be entitled to such possession by virtue of said trustee's deed, and that said suit is still pending; that the deed of trust to Finch and the mortgage to John and Eugene Halloran are both paid but are not satisfied of record; that said premises have been and still are the homestead of the complainants, and that they have been and still are residing on the same.

The bill further alleges that Patrick Halloran can not read nor write; that from December 1, 1876, to August 1, 1884, John Halloran, who is his brother, was his financial agent, bar-keeper and bookkeeper, and his confidential adviser in the management of his business, it being that of a saloon, hotel and boarding-house keeper; that as such, John Halloran collected rents belonging to him amounting to $4000, which he has failed to pay over and still owes him; that while acting in the capacity aforesaid, John Halloran collected large sums of money, aggregating $6000, belonging to Patrick Halloran as the fruits and profits of said business, and also $3000 of insurance money for a loss by fire, and that he deposited said moneys in a certain bank in his own name, and had failed to account for or pay the same over to Patrick Halloran.

The bill prays for an injunction restraining the prosecution of said action of forcible detainer; that said several deeds be cancelled and removed as clouds upon the complainants' title; that John Halloran be required to account for the moneys collected and received by him for the use and benefit of Patrick Halloran, and that all of said dealings and business transactions between John and Patrick Halloran be fully ascertained and adjusted, and also a general prayer for relief.

The defendants answered admitting the execution of the notes to Page & Buckland and of the deed of trust to Finch,

and also the execution of the deed to John and Eugene Hallo-
ran, but deny that said deed was intended as a mortgage, and
allege that it was an absolute deed.    They deny that Patrick
Halloran paid the notes to Page & Buckland, but allege that
John Halloran paid off said notes with money belonging to
himself and his brothers Garrett, Eugene and Jerry Halloran,
and that Page & Buckland delivered said notes and the deed
of trust securing the same to him, with an indorsement upon
the deed of trust, and that in equity said notes and deed of
trust belonged to him and his said brothers.    The answers
admit the sale under said deed of trust and the purchase of
said premises at said sale by Garrett Halloran, but deny that
said sale was fraudulent and void.    They admit that the com-
plainants are now in possession of said premises, and have
been in possession thereof since 1882, but allege that they
well knew the rights of the defendants therein; that they well
knew that from November, 1876, to July, 1879, said premises
were leased by John Halloran to Elizabeth and W. F. McCor-
mick, and the rents collected by John Halloran, and also the
collection by him of the insurance money arising from a loss
by fire of a house situated on said premises; that they well
knew of said property being assessed from year to year in the
name of John and Eugene Halloran and the taxes thereon
paid in their names; that they well knew that said property
had been advertised for sale under said deed of trust, and that
Garrett Halloran contemplated bidding at said sale; and after
the sale, that he had purchased and received a deed of said
property, and that at no time was any objection interposed
thereto by the complainants.

    The answers further allege that, after said sale, Garrett
Halloran had an understanding with Patrick Halloran that
the latter might remain in possession and have the use of said
property until such time as Garrett Halloran might call for
the same, provided he would keep up repairs, pay the taxes,
and otherwise keep and take care of the property, but that

Patrick Halloran, in 1886, neglected to pay the taxes on said property and allowed said property to be sold therefor, and afterwards caused said property to be redeemed in his wife's name, after which, Garrett Halloran made a demand for possession and brought his action for forcible detainer as charged, but would not have done so if Patrick Halloran had not attempted to procure some right in the name of his wife; that Patrick Halloran, with full knowledge of all the facts, has acknowledged the deed from himself to John and Eugene Halloran, and also the trustee's deed to Garrett Halloran; that John Halloran leased said property and collected the rents, and also collected said insurance money, and paid the taxes and took receipts in the name of himself and Eugene Halloran, and that Patrick Halloran, in different ways, and at different times, by declarations and other acts, while in and out of possession, recognized the ownership of said property in John and Eugene Halloran, and subsequently in Garrett Halloran; that during all the time aforesaid, Elizabeth Halloran was cognizant of said deeds, and that on account of such knowledge and acquiescence therein, and other acts of ratification, the complainants are now estopped to set up any claim of title to said property, and have, in general, been guilty of such laches and negligence as should bar their claim in equity. The answers further deny that John Halloran was ever the confidential adviser or agent of or collected money belonging to Patrick Halloran which he has failed to account for and pay over.

A general replication to said answers was filed, and the court thereupon submitted the cause to a jury for trial upon the following issues:

"*First*—Was the deed executed on the 15th day of August, 1877, to the premises in question, by Patrick Halloran to John and Eugene Halloran, in fact a mortgage, made and delivered to secure the payment of $1000, which said Patrick Halloran then owed said John Halloran.

"*Second*—And if so, has said $1000 been repaid by said Patrick Halloran to said John Halloran.

"*Third*—Were the notes to secure the payment of which the deed of trust on said premises were executed and delivered March 11, 1876, by said Patrick Halloran to said Marcus Finch, as trustee, paid by said Patrick Halloran."

At said trial the jury found said issues in favor of the complainants, and the court, after denying the defendants' motion for a new trial, rendered a decree finding that the deed from Patrick Halloran to John and Eugene Halloran was in fact intended by the parties thereto as a mortgage to secure to John Halloran an indebtedness for borrowed money, and that said indebtedness had been fully paid by Patrick Halloran to John Halloran; that the four notes to Page & Buckland secured by said deed of trust to Finch were fully paid long before the sale of said premises under said deed of trust, the first three being paid by Patrick Halloran and the fourth by John Halloran as his agent. It was thereupon decreed that the deed to John and Eugene Halloran, the deed of trust and notes, and the trustee's deed to Garrett Halloran be surrendered and delivered up for cancellation, and that Garrett Halloran be perpetually enjoined from prosecuting his action of forcible detainer. It was also decreed that the prayer of the complainants for an accounting against John Halloran be denied, and that the defendants pay the costs of the suit. The defendants bring the record to this court by appeal.

The questions raised by the assignments of error are nearly all mere questions of fact. The evidence is voluminous and to a very large extent contradictory. The testimony of Patrick Halloran, who is the principal witness on behalf of the complainants, if accepted as true, is, in our opinion, sufficient to sustain the verdict of the jury and the decree of the court, and his testimony finds strong corroboration in that of several of the other witnesses. His testimony, on the other hand, is directly and positively disputed in all its essential features by

that of John Halloran, the principal witness for the defense, and the testimony of that witness in like manner finds strong corroboration in that of various other witnesses. Any endeavor to harmonize the testimony of these witnesses would be futile, as it is directly and irreconcilably conflicting. We shall not attempt to analyze the evidence with a view of showing on which side the preponderance lies, as our doing so would serve no useful purpose, and would extend this opinion to an unwarrantable length. As we view the case, it is sufficient to say, that the relative credibility of the several witnesses was peculiarly a question for the jury and the court before whom they appeared and testified, and unless we can see that said court and jury were influenced by passion or prejudice, or clearly mistook or misapprehended the proper effect to be given to the evidence, their findings should not be disturbed. They saw and heard the witnesses, and were thus furnished with a means of judging of their candor and truthfulness so manifestly superior to anything afforded us by the mere written record of their testimony, that we must accept the verdict and decree as conclusively settling the facts, unless they are found to be clearly and demonstrably against the weight of the evidence. It is scarcely necessary to say that we find no such preponderance against the findings of the verdict or decree.

The point is made and argued at some length that the conveyance from Patrick Halloran to John and Eugene Halloran was made with intent, on the part of the grantor, to hinder and delay his other creditors, and that he must therefore be barred of all relief in a court of equity. It would perhaps be sufficient to say, that no such defense is set up or in any manner alluded to by the defendants in their answers, and that they are therefore in no position to insist upon it.

There is some evidence, though somewhat vague and inconclusive, that one of the motives by which Patrick Halloran was actuated when he made said conveyance to his brothers was,

to protect said property from another liability which he had contracted during a previous residence of two or three years in the State of Missouri, but the evidence is not altogether satisfactory that any such indebtedness in fact existed, or that the conveyance was in fact made with the intention on the part of Patrick Halloran to protect the property conveyed from such indebtedness.

But if it were admitted that the conveyance in question was made with intent to hinder, delay or defraud the grantor's creditors, and that both grantor and grantees participated in such fraudulent intent, it would not follow that the grantor would necessarily be barred of the relief sought for by his bill in this case. It is doubtless the rule, subject however to some exceptions, that where parties are concerned in illegal agreements, they are left without remedy against each other, provided they are *in pari delicto.* The law in such cases refuses to lend its aid to either party, but leaves them where it finds them to suffer the consequences of their illegal or immoral acts. This rule is applied to executed transactions as well as those which are executory and is enforced by courts of law as well as courts of equity. *Kirkpatrick* v. *Clark*, 132 Ill. 342. But the fraudulent grantor, though unable to assert or maintain any rights or remedies founded on the unlawful thing done or intended to be done, does not forfeit any right or privilege beyond that, or with respect to any other matter or thing not within the purpose of the wrongful act, and not affected by the corrupt intent. or caused or produced in consequence of it. To the extent of his intended wrong he is without remedy, but in all other respects his rights and remedies are the same as if no such wrong had been done or intended. Though guilty of a wrong or transgression of the law in one particular, he does not become an outlaw or forfeit his rights to legal protection in all others, nor lay himself open to the frauds and machinations of others to be practiced against him with impunity. It must be clearly shown that the debtor seeks

relief from the fruit of his own wrong or from the consequences of his own unlawful act before his action can be dismissed. If it be not these, but something outside and independent of his unlawful act or purpose, and not necessarily resulting from it, he is entitled to favorable consideration, and his action should be retained. *Clemens* v. *Clemens*, 28 Wis. 637; Bump on Fraudulent Conveyances, 452. It has accordingly been held that if the fraudulent transfer consists of a mortgage, the debtor may file a bill to redeem the property from its operation. *Smith* v. *Quartz Mining Co.* 14 Cal. 242; *Jones* v. *Rahilly*, 16 Minn. 283.

If then it be admitted that the conveyance in question here was fraudulent as claimed, the bill is not brought to set aside or to relieve the grantor from any of the consequences growing out of its execution, nor is it brought to assert any right growing out of or claimed under said conveyance. Said deed, as the evidence tends to show and as the decree finds, was in fact a mortgage, given to secure a certain indebtedness to one of the grantees, and was valid as between the parties. The bill proceeds upon the theory of its entire validity, and alleges payment, by means of which the lien thereby created has been discharged and the mortgage rendered *functus officio*. The bill is brought for the assertion of rights which were not embraced in the fraudulent mortgage and were not conveyed by it, and which remained as completely under judicial protection as though the mortgage had not been executed.

It is insisted that the court erred in refusing to give to the jury one instruction asked on behalf of the defendants. Fifteen instructions were given at the instance of the defendants, which seem to us to cover the law applicable to the case very fully. Two were refused, the second of which it is claimed should have been given. There seem to us to be several well founded objections to that instruction, but we will pause only to point out one. It closes with the unqualified proposition that if the evidence shows that the complainants have ac-

knowledged or confessed the rights of Garrett Halloran under the trustee's sale, they are now estopped to dispute those rights. An acknowledgment by the complainants of the validity of said sale and of the rights acquired by the purchaser thereunder may or may not work an estoppel according to the circumstances. It certainly would not unless made with full knowledge of all the facts, but such knowledge is not a part of the hypothesis of the instruction. Furthermore, while an acknowledgment or confession by a party against his interest may always be given in evidence against him, it may or may not be conclusive. If the opposite party, relying upon the admission and acting upon it has altered his position, the party making the admission will not be permitted afterward to retract it. But ordinarily, a mere admission or confession, unaccompanied by any equitable circumstance which should render it conclusive, will not work an estoppel, but is capable of being rebutted by other evidence. The instruction was properly refused.

It is also insisted that a new trial should have been granted by the Circuit Court because of a certain improper remark made by the counsel for the complainants in his closing argument to the jury. The only way in which evidence of the remark complained of is sought to be imported into the record is by an affidavit filed in support of the defendants' motion for a new trial, and that affidavit merely shows that the remark was made, but fails to show that it was objected to, or that the court was called upon to make any ruling in relation to it, or that any exception was taken. A counter affidavit however shows that, upon objection by counsel for the defendants, the court held the remark to be improper, and directed counsel to desist from further remarks of that character, and that said counsel did so desist and practically retracted what he had already said. It needs no argument to show that these facts establish no sufficient ground for a new trial.

It was also shown by an affidavit filed in support of the motion for a new trial, that after the trial was closed and. the jury had retired to their jury room in the third story of the court house to consider of their verdict, a violent altercation took place in the court house yard, between Patrick and John Halloran, Patrick Halloran being the aggressor, and being immediately thereafter arrested and locked up in jail. It is claimed that the said altercation may have come to the knowledge of the jury, and may have had some influence upon their deliberations unfavorable to the defendants. The affray seems to have taken place in the dark and to have lasted but a few seconds, and there is no evidence that it was seen by the jury, or that the fact that it had taken place was in any way communicated to them. There is no ground therefore for supposing that it could have influenced them in the slightest degree. But even if the jury had known of the affair, we can not presume that their deliberations would have been at all affected by it.

After giving the entire record a careful examination, we are of the opinion that no sufficient ground is shown for setting aside the decree, and it will therefore be affirmed.

*Decree affirmed.*