CARRIE R. HEMPSTEAD *et al.* Defendants in Error, *vs.* CHARLES MARKS BROAD, Plaintiff in Error.

*Opinion filed October 24, 1916—Rehearing denied Dec. 6, 1916.*

1. GUARDIAN AND WARD—*power of a guardian to dispose of his ward's personal property.* At common law a guardian had power to sell and dispose of the personal property of his ward without an order of court, provided he acted in good faith, and the common law powers of guardians still exist in Illinois so far as they are not inconsistent with any statute.

2. SAME—*section 17 of the Guardian and Ward act supersedes common law.* Section 17 of the Guardian and Ward act, in so far as it prescribes the powers and duties of guardians, supersedes the common law.

3. SAME—*a guardian cannot surrender interest in real estate without an order of court.* Neither at common law nor under the Illinois statutes is a guardian authorized to convey or surrender any interest in the real estate of his ward without an order of court.

4. SAME—*when guardian cannot surrender right to sue out writ of error.* A guardian has no power, without the approval of the probate court or any proceeding in that court, to agree, for a valuable consideration, that a decree determining the right of his ward in real estate and finding that another person has title in fee simple shall be final and conclusive against his ward.

5. SAME—*when a ward is not estopped to repudiate guardian's agreement.* A ward is not estopped to repudiate an agreement by his guardian to permit a decree finding the title to real estate adversely to the ward to become final and conclusive unless the ward voluntarily accepts the consideration for the agreement with full knowledge of the facts.

6. CONTRACTS—*when agreement not to sue out writ of error affects real estate.* Although the right to sue out a writ of error may be a personal right, yet if the decree involved determines the title to real estate, an agreement not to exercise the right to sue out a writ of error is a disposition of a right concerning real estate.

WRIT OF ERROR to the Circuit Court of LaSalle county; the Hon. EDGAR ELDREDGE, Judge, presiding.

C. P. GARDNER, for plaintiff in error.

J. M. RIGGS, ROBERT C. MORSE, and NELS F. ANDERSON, for defendants in error Gertrude D. Demerath *et al.*

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The record of a suit in equity in the circuit court of LaSalle county in which Carrie R. Hempstead, executrix, and Fred H. Haskell, executor, of the last will and testament of Mary E. McIntire, deceased, were complainants and Charles Marks Broad and others were defendants was filed in this court pursuant to a writ of error sued out by Charles Marks Broad. The record consists of the pleadings, orders and decree. The bill as amended set forth the last will and testament of Mary E. McIntire, deceased, by which devises and legacies were made and given to the daughters of the testatrix, and asked the court to construe the will and determine whether the daughters took estates

in fee in the real estate devised to them, respectively, and in the personal property given to them, or life estates only. It was alleged that the complainants were given full power and authority to sell all the real estate of which the testatrix died possessed and to execute full conveyances therefor, in their discretion, and to distribute the proceeds of the sale; that the complainants had determined it was for the best interests of the estate that the property be sold and the proceeds paid over to the devisees in place of the lands specifically devised; that they were about to make sales as soon as suitable purchasers could be found at fair values, and it would be their duty to make distribution of the proceeds according to the will, and that difficulties of construction had arisen which were necessary to be determined by the court. Among other devises of real estate, the second paragraph of the will devised to Grace M. Demerath, daughter of the testatrix, a farm near Walnut, in Bureau county, described in the will, and by the same paragraph the daughter was given $7500. The sixth paragraph was as follows: "It is my intention and express desire that all property, of every kind and character, herein bequeathed shall go directly to each of my said daughters as described herein and to the heirs of their bodies or direct descendants and to no one else, and if either of my said daughters shall decease before inheriting under this will and leave surviving no children or descendants of children, such share shall go to the survivors of the legatees herein." The bill alleged that Grace M. Demerath was married to the defendant Nicholas J. Demerath, and that after the death of the testatrix Grace M. Demerath died on or about December 8, 1908, intestate, leaving Nicholas J. Demerath, her husband, and Charles Marks Broad, her son by her former marriage, as her only heirs-at-law. Charles Marks Broad was an infant and a guardian *ad litem* for him was appointed, who filed an answer alleging that he was an infant of the age of fifteen years, and therefore submitted his

rights and interests to the tender consideration and protection of the court. A decree was entered reciting that the cause was heard on the amended bill taken as confessed by Nicholas J. Demerath and other defendants, the answers of the guardians *ad litem* for infant defendants, and proofs taken in open court, and finding that the daughters of the testatrix, including Grace M. Demerath, took a fee in the lands devised to them, respectively, and the absolute title and ownership of personal property given to them; that Grace M. Demerath at the time of her death was the owner in fee of the farm near the village of Walnut; that she left a last will and testament, by which she devised a substantial legacy to her son, Charles Marks Broad, and the balance of her estate to her husband, Nicholas J. Demerath. The decree ordered that if the executors should make sale of the farm, they should, after payment of the expenses of the sale, pay the proceeds to Nicholas J. Demerath, to be his absolutely, and in case no sale was to be made they should execute to him an absolute conveyance of the real estate.

The assignment of errors, which stands as the declaration of the plaintiff in error, charges that the court erred in finding and decreeing that the last will and testament of Mary E. McIntire vested in Grace M. Demerath the fee of the real estate and an absolute title to the personal property bequeathed to her; in not finding and decreeing that a life estate was vested in Grace M. Demerath with remainder to the heirs of her body, and not finding that the fee simple title to the property was vested in plaintiff in error, Charles Marks Broad. To that assignment of errors Gertrude D. Demerath, as executrix of the last will and testament of Nicholas J. Demerath, (now deceased,) and in her own right as residuary devisee and legatee under his will, and LeRoy Demerath, Peter Demerath, Katherine Demerath, Anna Demerath, Margaret Demerath, Gertrude Demerath, Mary Abraham, Lena Leichty and Peter P. Demerath, lega-

tees under the said last will and testament, filed three pleas. The first alleged that after the rendition of the decree plaintiff in error, an infant of the age of seventeen years, was living with his father, Charles A. Broad, in Cook county; that on July 15, 1910, his father, Charles A. Broad, was by the probate court of Cook county appointed his guardian, and that the guardian received from Nicholas J. Demerath $6000, paid to said guardian in consideration of a promise and agreement of said Charles A. Broad, as guardian, that said decree should thereafter remain a final adjudication, unquestioned and in full force as to the respective property rights of the plaintiff in error and Nicholas J. Demerath in the subject matter adjudicated by the decree. The second plea made the same allegation as the first, with the additional averment that on August 21, 1914, after the plaintiff in error had attained the age of twenty-one years, his guardian paid to him the said sum of $6000 and the plaintiff in error accepted, retained and appropriated the same to his own use. The third plea was the same as the second, with the further allegation that the plaintiff in error accepted, retained and appropriated, and still retained and appropriated, said sum to his own use with knowledge of the source from which his guardian obtained it and with knowledge of the purpose for which it was paid to the guardian. The plaintiff in error filed his replication to the third plea, denying that he accepted, retained and appropriated, or did then retain and appropriate to his own use, the said sum of $6000 with knowledge of the source from which his guardian obtained it and with knowledge of the purpose for which it was paid to and received by the guardian, and alleged that he brought into court the said sum of $6000, with interest thereon at the legal rate from the date on which it was received by the guardian, to abide the order of the court. The defendants in error filed rejoinders to the replication to the third plea, tendering issues of fact. The plaintiff in error demurred to the first and

second pleas, and the defendants in error having joined in demurrer, the same was submitted to the court.

The question argued upon the demurrer is whether a guardian has power, as such, without the approval of the probate court or any proceeding in that court, to agree that a decree determining the rights of his ward in real estate and finding that another has title in fee simple to such real estate, for a consideration paid to the guardian, shall be final and conclusive against the ward.

At the common law a guardian had power to sell and dispose of the personal property of his ward without an order of court, provided he acted in good faith, (*Schmidt v. Shaver,* 196 Ill. 108,) and the common law powers of guardians still exist in this State so far as they are not inconsistent with any statute. (*Bond v. Lockwood,* 33 Ill. 212.) To bring the case within that rule counsel for the defendants in error contend that what the guardian did was to waive, release or surrender, for a consideration of $6000, the right to sue out a writ of error; that such right is a right of action and personal property, and that the agreement did not come within section 17 of chapter 64 of the Revised Statutes, requiring the approval of the probate court. That section provides that the guardian shall settle all accounts of his ward, and demand, sue for and receive in his own name, as guardian, all the personal property of and demands due the ward, or, with the approbation of the court, compound for the same and give a discharge to the debtor upon receiving a fair and just dividend of his estate and effects, and the view of counsel for the plaintiff in error is that the agreement came within that section, restricting the power of a guardian to compound for demands due his ward. So far as the statute prescribes the powers and duties of guardians it supersedes the common law, and the section in question was interpreted and applied in *Hayes v. Massachusetts Mutual Life Ins. Co.* 125 Ill. 626, *Knights Templars and Masons Life Indemnity Co.*

v. *Crayton,* 209 id. 550, and *Schmidt* v. *Shaver, supra.*
Those were all cases of money demands due the ward, and
the argument in support of the pleas is, that the right to
sue out a writ of error is not a demand and therefore not
within the terms of the statute. If that is so it does not
reach the question of the power of the guardian to make
the alleged agreement, since the right to sue out a writ
of error and secure a review of a judgment or decree may
concern personal property or real estate, and if it con-
cerns real estate the conclusion is that the power of the
guardian must be the same as in any other matter affecting
the title of his ward's estate. The right to a review of
the decree was a right to a final and conclusive determina-
tion by this court whether the plaintiff in error had a vested
remainder in the real estate in question, and neither at com-
mon law nor by our statute was a guardian authorized to
convey or surrender any interest in the real estate of his
ward without the approval of the probate court. Section 28
of chapter 64 of the Revised Statutes permits the guardian
to apply to the court for leave to sell real estate of his
ward, and a guardian has no power to sell such real estate
unless authorized by the court. A sale made by a guard-
ian without the direction and sanction of the court is void.
(*Mason* v. *Wait,* 4 Scam. 127.) The Statute of Wills lim-
its the power of the guardian to mortgage or lease real
estate for a longer term than until the ward reaches his
majority, and a mortgage in fee executed by a guardian
upon his ward's land is void so far as the interests of
the ward are involved. (*Merritt* v. *Simpson,* 41 Ill. 391.)
The guardian has no power to sell his ward's land, with-
out an order of the probate court, for the purpose of rais-
ing funds for the ward's support and education, and such
a sale by a guardian is absolutely void. (*Cooter* v. *Dear-
born,* 115 Ill. 509.) A right to begin an action by suing
out a writ of error or otherwise may be a personal right,
but if it is a right by which real estate is to be recovered

or secured to a ward, an agreement not to exercise the right and that the ward shall not exercise it is a disposition of a right concerning real estate. If there is a decree against a ward concerning his title to real estate and the guardian relinquishes the right to a review and agrees that the decree shall be a final adjudication of the ward's rights, his act is as much a matter pertaining to real estate as though the agreement was not to take effect as a bar to a writ of error, which was merely a method of obtaining the review. There can be no difference between the power of a guardian to consent, for a consideration, at the time a decree is entered, that there shall be a finding against his ward concerning the title to real estate, and a like agreement made afterward that the decree shall be final. The effect is precisely the same, because a decree entered by consent can not be appealed from and error cannot be assigned upon it. (*Armstrong* v. *Cooper*, 11 Ill. 540; *Krieger* v. *Krieger*, 221 id. 479.) Certainly, the guardian of Charles Marks Broad would have had no right to consent to the decree when entered and thereby waive the right to an appeal or writ of error, and it must be held that he could not afterward do the same thing in a different way.

It is essential to an estoppel *in pais* that the act of the party estopped should be with a knowledge of the facts. Such an estoppel is founded upon equitable considerations for the promotion of justice. (10 R. C. L. 694.) If plaintiff in error voluntarily accepted $6000 with full knowledge of the facts it would be contrary to justice and unconscionable to permit him to set aside the decree, but without such knowledge his act could not work an estoppel. *Halloran* v. *Halloran*, 137 Ill. 100.

The first and second pleas failed to aver knowledge of the facts, and the demurrer to them is sustained.

*Demurrer sustained.*