BARBARA ANN CAPOGRECO, Plaintiff-Appellee, v. JOE LEO CAPOGRECO, Defendant-Appellant.

Fifth District   No. 77-398

Opinion filed June 12, 1978.

G. MORAN, J., dissenting.

Mitchell & Armstrong, Ltd., of Marion, for appellant.

Bernard A. Paul, of Marion, for appellee.

Mr. JUSTICE WINELAND delivered the opinion of the court:

On October 9, 1973, Barbara Ann Capogreco filed a complaint for divorce in the Circuit Court of Williamson County against her husband of 15 years, Joe Leo Capogreco. On March 7, 1974, the court entered a decree of divorce, but reserved its decision as to the apportionment of the three parcels of real estate, totalling some 194 acres, which had been held in joint tenancy by the parties. The decree provided that upon receiving and approving an appraisal the court might without further hearing enter a supplemental decree allocating the property and debts between the parties.

Subsequently, Mrs. Capogreco filed an amended complaint seeking partition of the real estate and an accounting by her ex-husband as to his use of the jointly owned property in the business of farming. On January 8, 1975, the court entered an order declaring that each party was entitled to one-half of the real estate, and that partition should be granted. On March 30, 1977, after determining that the real estate was not fairly susceptible of partition by physical division of the parcels, the court ordered that notice of sale be given, and that the property be sold and the proceeds distributed to the parties according to their interests.

After the date for filing claims not of record had passed, counsel for Mr. Capogreco filed a motion attacking the court's decree for sale. The motion alleged that no opportunity had been given to present evidence as to equitable liens and liabilities of the parties, and that the decree did not provide for or adjudicate such matters. The motion set out certain expenditures he had incurred in connection with the jointly owned real estate, and argued that he had an equitable lien upon the plaintiff's interest

in the property. His former spouse did not respond to this motion, which the court held in abeyance until after the sale. The real estate was subsequently sold to Adam Capogreco, apparently a relative of the defendant, for $134,500, and the sale was approved by the court.

On June 7, 1977, Mr. Capogreco's motion was denied in principal part after a hearing. The court then ordered that the proceeds of the sale be distributed in virtually equal shares to the parties.

Defendant appeals, contending that the court below erred in failing to credit him, in distributing the proceeds, with the valuable improvements which he made upon the property.

■■■ The Partition Act provides that the court is to direct distribution of the proceeds "to the persons entitled thereto, according to their interests." (Ill. Rev. Stat. 1975, ch. 106, par. 62.) Liens on the property should be determined before distribution. Where a co-owner responsible for permanent, valuable improvements to property cannot be allotted the improved portion of the property upon partition, the proceeds of the sale should be apportioned so that he gets, in addition to his pro rata interest, an amount equal to the increase in the value of the property caused by the improvements. (*Noble v. Tipton*, 219 Ill. 182, 188, 76 N.E. 151, 153 (1905); see also *David v. Schiltz*, 415 Ill. 545, 114 N.E.2d 691 (1953); *Clarke v. Clarke*, 349 Ill. 642, 183 N.E. 13 (1932).) The rationale for imposing an equitable lien upon the shares of the other owners is to avoid their being unjustly enriched by improvements to which they did not contribute. (*Cf. Stegeman v. Smith*, 67 Ill. App. 2d 451, 214 N.E.2d 597 (4th Dist. 1966).) The case law makes clear that the proper measure of the extent of the equitable lien is not the cost of the improvements (which might inflict an injury upon a co-owner by making him pay for something valueless that he did not desire), but the enhanced value of the real estate. The increase in value must, of course, be proved by proper evidence. *David v. Schiltz*.

At the hearing on distribution in this cause, Mr. Capogreco testified that he had borrowed and spent considerable sums of money over the years to maintain and improve the farm. While they were married, his wife had always refused to contribute any part of her salary toward the expenses of the farm. She did not do any work on the farm: "she told me she was liberated." She kept her income in a separate bank account. He made all the payments on the loans, paid all the taxes, bought all the fertilizer, and so forth.

A real estate appraiser testified that he was familiar with the farm in question. He had examined it three or four years previously, and again shortly before the hearing. His testimony was somewhat confusing; as we understand its purport, in his opinion the land's value had been increased by some $44,500 above normal appreciation because of the improvements that Mr. Capogreco had made.

The plaintiff testified that she had worked with her ex-husband on their "family farm" and assisted him whenever he needed help over a period of many years. Many of the payments and expenditures testified to by him had come from her salary as a school teacher. She only opened a separate bank account in her own name in 1970 after bill collectors attempted to attach their joint account.

■■ In its order of January 8, 1975, the trial court found, we think correctly, that each party had a one-half interest in the land acquired during the marriage and held in joint tenancy, irrespective of the contributions made by each in the acquisition of the land. There is ordinarily a strong presumption that a gift is being made, not only when land is acquired, but also when one spouse makes improvements to property jointly owned with the other spouse; nevertheless, such a presumption can be overcome. (See *e.g., Kratzer v. Kratzer*, 130 Ill. App. 2d 762, 266 N.E.2d 419 (4th Dist. 1971); *Scanlon v. Scanlon*, 6 Ill. 2d 224, 127 N.E.2d 435 (1955).) It is weakened by actions evidencing a clear intention to the contrary. The reasons for such a presumption vanish, we would think, upon dissolution of the parties' marriage. Much of the evidence given here was tangential at best to the question of the increased value of the property because of Mr. Capogreco's improvements. Nevertheless, we think it is clear from the record that the value of the property did increase because of Mr. Capogreco's efforts, and that, somewhere along the line, certainly after the divorce, the improvements were no longer intended as gifts to Mrs. Capogreco.

■■ At the conclusion of the June 7 hearing, the trial court stated: "I also cannot find there is any equitable adjustment that should be imposed upon her because one thing that is really missing throughout this whole thing is that there has never been an accounting as to what profits were made, what the rental value of that land was, to run this type of business, that portion was not shown." Thus the absence of evidence as to rents and profits appears to have been one reason for the denial of the adjustments defendant was seeking. But it was plaintiff, not defendant, who had demanded an accounting, and then failed to follow up on the demand. To penalize defendant for plaintiff's failure to prove what she was entitled to was error.

■■ We have concluded that the order of distribution of the proceeds from the sale of the real estate must be reversed, and the cause remanded for redistribution. On remand, each party should be given the opportunity to file new pleadings, upon which a new evidentiary hearing as to the distribution of the proceeds of the sale can then be had. At the hearing, defendant will have an opportunity to prove the extent to which the value of the property was enhanced by his efforts after the parties' divorce. After the date of the divorce, when plaintiff had definitely ceased

making any contribution to the land, and defendant exercised sole control over it, it would be unreasonable to presume that any improvements made by the defendant were intended as gifts to his ex-wife. Plaintiff, on the other hand, will have the opportunity to prove her entitlement to a share of the rents or profits from the property during the period subsequent to the divorce, when she received no benefits from the land. (See, *e.g., Kratzer v. Kratzer; Cooter v. Dearborn,* 115 Ill. 509, 4 N.E. 388 (1886).) The court should also make a determination of the parties' respective obligations as to the debts against the real estate in question.

On remand, the Illinois Marriage and Dissolution of Marriage Act, effective October 1, 1977, would presumably be applicable. (See Ill. Rev. Stat. 1977, ch. 40, par. 801.) The new statute provides that marital property be divided "in just proportions" (Ill. Rev. Stat. 1977, ch. 40, par. 503) upon dissolution of marriage. It appears to us that application of the "equitable apportionment" principles of the new statute would probably lead to the same result in this case as would be reached under the previous Divorce Act, with its focus on the manner in which legal title was held and the doctrine of "special equities." In any event, partition of real estate remains available to a party to a dissolution proceeding (see Ill. Rev. Stat. 1977, ch. 40, par. 514), and the provisions of the Partition Act remain unchanged.

For the foregoing reasons, the judgment of the Circuit Court of Williamson County is reversed, and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

JONES, J., concurs.

G. J. MORAN, J., dissents.